**Leon H. STANLEY, Appellant,**

v.

**W. R. HELTON et al., Appellees.**

**No. 17088.**

Court of Civil Appeals of Texas, Fort Worth.

Feb. 13, 1970.

John H. Chambers, Arlington, for appellant.

DeVore, Bagby, McGahey, Ross & Burnett, and Wm. L. Bagby, Arlington, for appellees.

OPINION

MASSEY, Chief Justice.

Plaintiff Leon H. Stanley sued to replevy personal property from the possession of defendants W. R. Helton and Robert L. Harlan, plus damages for wrongful detention. Trial was before the court without a jury and judgment was for the defendants, from which plaintiff perfected his appeal.

Reversed and remanded.

Under the initial contracts of the parties, both in the contract to sell and in the contract of sale, there was a parcel of realty which was contracted to be delivered by plaintiff to defendants.

Title to the realty passed pursuant to plaintiff's warranty deed of June 28, 1968. Defendants did not require immediate possession, and the parties agreed to plaintiff's proposal of July 3, 1968, as follows:

"That I, Leon H. Stanley has been granted by W. R. Helton and Robert L. Harlan unrestricted *rights, without charge* or penalty of any nature, to enter upon and remove from said real estate any and all personal property now situated thereon, such property not having been conveyed to Grantees; further, that I, Leon H. Stanley further agree to remove all such personal property, including temporary structures, on or before December 31, 1968, or within 45 days of receipt of written notice to remove same."

Pursuant to discussion of the parties subsequent to the above letter, the plaintiff wrote another letter to the defendants. Said letter was that of July 23, 1968, reading in part, as follows:

"At the time I first discussed the sale of this property * * * it was my stated intention to retain all temporary structures * * * I again discussed this matter with Mr. Gould at the time he delivered the sales contract and again when he delivered the closing papers.

"Although these were my expressed desires and intentions, let me assure you that this misunderstanding can be resolved with no additional expense to either of us. For tax, depreciation, and insurance purposes, I wish to retain title to these buildings *until such time as you desire complete occupancy of the property, at which time I will execute a bill of sale to all personal property then remaining on the site,* including any and all buildings; and by this agreement I hereby obligate myself to execute same for $1.00 and other considerations." (Emphasis supplied.)

Apparently there was no oral communication between the parties between the date of the letter of July 23, 1968, and a subsequent written communication on October 29, 1968.

On October 29, 1968, defendants wrote the plaintiff, as follows:

"According to the agreement stated in your letter of July 3, 1968, we ask that you please vacate buildings on said property within thirty days of this date and also *clear the property of all personal belongings as of December 31, 1968.*" (Emphasis supplied.)

Plaintiff did not remove the personal property belonging to him by December 31, 1968. Such remained thereupon, at least in part, on February 10, 1969. On said date the plaintiff wrote the defendants stating, in part, as follows:

"However, it now appears possible that we can move these materials and equipment during the week of February 17, 1969. * * *"

The next day, February 11, 1969, the defendants' attorneys wrote plaintiff stating, in part, as follows:

"* * * In order that there be no misunderstanding in the future, you are respectfully put upon notice as follows:

"1. The only parties who are privileged to be upon the property or use any part thereof are W. R. Helton and Robert L. Harlan, their agents and employees.

"2. Mr. Helton and Mr. Harlan claim of you as of this date damages in connection with the fire and storage charges in connection with certain *items that you have left upon the property and as of this date have not moved.*" (Emphasis supplied.)

On February 14, 1969, the defendants again wrote plaintiff stating, in part, as follows:

"You are specifically informed that you are not to move any material or equipment from Block 2 of Arlington Villa. This is in line with my prior registered letter (the letter of February 11, 1969) wherein I advised you that *we claim all of the remaining material and all of the equipment in lieu of damages to the building.*" (Emphasis supplied.)

On March 18, 1969, plaintiff filed his suit for sequestration, plus damages accruing at $100.00 per day from April 15, 1969, for wrongful retention of his property. On March 21, 1969, the parties entered into an agreement for the property in question to be left on the defendants' premises though treated and considered for all necessary purposes as in the custody of the Sheriff of the county where located.

Defendants' pleadings upon trial alleged that plaintiff had agreed to, but did not, remove the property on or before December 31, 1968, and had made no effort to recover possession until date his suit was instituted. Defendants alleged that such conduct constituted an abandonment of the property, and that said property so abandoned had come into the possession of the defendants and had become their personal property. Alternatively defendants claimed damages at rate of $150.00 per month for the trespass by plaintiff in failing to remove the property. Damages were also sought in the alternative for other acts of the plaintiff which defendants alleged to constitute trespass.

By the judgment rendered in the case the trial court denied plaintiff's claim for replevin and damages. The court also denied defendants' counterclaim for money damages. In a letter written by the court to the attorneys in the case, not qualifying as Findings of Fact or Conclusions of Law under provisions of Texas Rules of Civil Procedure, 296, the court expressed the opinion that as of midnight, December 31, 1968, title to the personal property remaining on the property vested in defendants as an effect resulting under the plaintiff's letter to defendants on July 23, 1968—the provisions of which, by conduct of the defendants, became their contract.

On the appeal we first consider the defendants' contention that "Since a Motion for New Trial was filed by appellant herein he is restricted on appeal to only those points of error raised in that motion even though a non-jury trial was involved. Appellant's three points of error, not having been raised in his Motion for New Trial, have, therefore, been waived."

■ The defendants' contention in this respect is without merit. Where a motion for new trial, unnecessary to an appeal because trial is before the court without a jury, is nevertheless filed by the losing party in an attempt to persuade the trial court to set aside the judgment it has rendered and grant a new trial, the only effect thereof in so far as the appellate court is concerned is that operative to extend the time for taking the steps necessary for the perfection of an appeal. In such an instance, where the motion for new trial is overruled specifically or by operation of law, the complaining party remains entitled to ground the appeal in every point of error which would have been available to him had no motion for new trial ever been filed. 3 Tex.Jur.2d, p. 461, "Appeal and Error—Civil", Sec. 185, "—Where motion needlessly filed"; Park v. Essa Texas Corporation, 158 Tex. 269, 311 S.W.2d 228 (1958); Hoge v. Lopez, 394 S.W.2d 816 (San Antonio, Tex.Civ.App., 1965, no writ hist.) in which there is extensive discussion of the question in recognition of the fact that there are authorities to the contrary annotated under T.R.C.P., 323, "Grounds of Motion in Causes Tried Without Jury"; and Pearce v. Cross, 400 S.W.2d 622 (Fort Worth, Tex.Civ.App., 1966, affirmed at 414 S.W.2d 457). Efficacy of plaintiff's points of error are not otherwise challenged.

Upon review of the language of the several letters from which we have quoted it would conclusively appear that the silence of the defendants following plaintiff's letter of July 23, 1968 was not intended by them to indicate assent to what might be termed plaintiff's offer made therein, for in their letter of October 29, 1968 they demanded that plaintiff clear the property of all personal belongings as of December 31, 1968. It was not until the letter of February 14, 1969, that the defendants assumed a position construable to the contrary, for it was then that the defendants made claim to what they had (seemingly) acknowledged as plaintiff's personal property up to that date. On February 11, 1969, they insisted that they were entitled to be paid storage charges upon such property of plaintiff as had been allowed to remain upon their premises.

The construction to be made contractually would be as of December 31, 1968. Theretofore the defendants had demanded of the plaintiff that the property in question be removed, and defendants' position in this respect continued until February 11, 1969, when—because the plaintiff had not removed the property—defendants notified plaintiff that he owed storage charges (in the form of damages) because he had not removed it. Three days later, February 14, 1969, defendants laid claim to the property "in lieu of damages to the building", not because of any contractual or quasi-contractual right. It was resolved, under the facts adduced on trial, that defendants had no claim because of fire damages done to the building referred to in the letter. Therefore defendants were without any right to the property "in lieu of damages to the building", as expressed in the letter of February 14, 1969.

On trial the defendants asserted right to the personal property on the theory that plaintiff had contractually abandoned it as of December 31, 1968, and that it became the property of the defendants under and by reason of defendants' implied acceptance of the proposal of the plaintiff in his letter of July 23, 1968. But the fallacy in defendants' position is evidenced by the undisputed evidence that the proposal of said letter was not accepted by them, at least until some time after the time passed for contract consummation.

We are not in doubt that the property in question was that of the plaintiff at the material date of December 31, 1968. Neither do we consider it a question but that the defendants were, of and from that date, entitled to damages because plaintiff's acts and/or omissions thrust his property onto defendants' land and he became guilty of a trespass for which he would be responsible in damages to the defendants. The defendants sought such damages, but the court denied them. The defendants did not present in this court any cross-point of error by which right thereto was asserted should we conclude that title to the personalty remained in plaintiff.

Plaintiff, on the other hand, seeks remand should we conclude, as is the case, that he holds title to the property. It is his contention that he is entitled to damages for the period during which the defendants wrongfully withheld it from his possession. The issue was unresolved, not having been reached by the trial court.

Judgment reversed and cause remanded for another trial.

BREWSTER, J., not participating.